1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

In re Subpoenas to Medport LA, LLC

Case No.: 2:20-cv-00552-JAD-BNW

**ORDER**

Movants filed a motion to compel information from non-party Medport pursuant to Fed. R. Civ. P. 45(2)(B)(i). ECF No. 1. Medport responded and filed a countermotion, asking this court to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3). ECF Nos. 4, 5. Movants responded to the countermotion. ECF No. 17. Medport filed its reply to its countermotion. ECF No. 18. This court held a hearing on May 26, 2020. ECF No. 23.

This court denies Movants' motion (ECF No. 1), as the amount Medport paid for accounts receivable is neither relevant to any of Movants' claims or defenses nor is it relevant to the issue of bias. While the court is inclined to believe that some of the other documents Movants subpoenaed may be relevant to bias, given the lack of specificity from Movants as to what categories of information fall within the arguments it makes, the court cannot fairly determine which documents, if any, are discoverable. Accordingly, the court will deny the remainder of Movants' motion to compel without prejudice. Because the court is denying Movant's motion to compel in its entirety, the court denies Medport's countermotion (ECF No. 5) as moot.

**Background**

Movants are the Defendants in the underlying personal injury case, which was filed in Alabama. The case was removed to federal court in the Northern District of Alabama. Plaintiff was treated for injuries in the state of Louisiana and had several medical procedures. He will

1    claim the cost of these medical procedures as damages during trial in Alabama. Some of

2    Plaintiff's providers sold their accounts receivable to non-party Medport, who purchases accounts

3    receivable at a discounted rate. Movants seek access to these records, including the amount for

4    which Medport purchased these accounts receivable. Medport opposes this request, arguing this

5    information is irrelevant and disproportionate to the needs of the case.[1]

6                                    **Movants' Argument**

7           Movants' argument appears to be that the underlying plaintiff can only recover the amount

8    Medport spent in purchasing the accounts receivable from the different medical providers,

9    irrespective of the amount plaintiff may owe Medport. ECF No. 1 at 4-5. Movants cite to *Bobo v.*

10   *Tennessee Valley Authority*, 855 F.3d 1294, 1311 (11th Cir. 2017), for the proposition that

11   "Alabama does not permit recovery of medical charge amounts that are written off by healthcare

12   providers under contractual agreements with insurers." ECF No. 1 at 4. In turn, Movants argue

13   that Medport is a medical funding company and that, while not a health insurance company as

14   that in *Bobo*, Medport should still be treated as such. *Id*. That is, Movants claim that Medport

15   made payments to Plaintiff's medical providers on his behalf and seems to argue by analogy that,

16   as a result, certain amounts were written off. *Id*. Given this, it appears Movants claim that

17   Plaintiff's true measure of damages should not be what he was charged for medical services, but

18   the amount that Medport paid for those services "on his behalf." Movants also cite to Ala. Code §

19   12-21-45, which provides that "evidence that the plaintiff's medical or hospital expenses *have*

20   *been or will be paid* or reimbursed shall be admissible as competent evidence" in any lawsuit

21   "where damages for any medical or hospital expenses are claimed…." *Id*. As a result Movants

22   argue it is entitled to know how much Medport paid for these medical services.

23

24

25

26

27        [1] Medport makes other arguments as part of its countermotion, which requests that this
     court quash or modify the subpoena. As explained below, this court is denying the Motion to
28   Compel. Accordingly, court need not decide Medport's countermotion.

1    In addition, Movants point to the connection between Medport and an entity by the name

2    of MoveDocs to explain the need for certain documentation from Medport to show bias.[2] ECF

3    No. 17 at 3-6, 7-8. It argues that MoveDocs connects or refers patients to their medical providers

4    associated with MoveDocs and that they are also involved in their treatment. *Id*. Movants refer to

5    an e-mail from the medical provider to the Plaintiff's attorney, where MoveDocs is also copied,

6    requesting "pre-approval" for services. *Id*. In turn, Movants argue this shows Medport directed

7    and financed Plaintiff' treatment. *Id*. To further prove this business entanglement between

8    Medport and medical providers, Movants directs this court to MoveDocs' "facility map,"

9    contained on its online platform, which Movants argue shows MoveDocs directs patients to

10    medical providers. *Id*. At bottom, Movants contend that Medport directed, financed, and

11    potentially approved plaintiff's treatment. *Id*.

12    Given this relationship, Movants argue that they are entitled to probe the issue of bias. *Id*.

13    at pp. 7-8. According to Movants, medical providers' favorable testimony at trial translates into

14    verdicts for plaintiffs, which in turn leads to Medport referring more patients to these medical

15    providers. *Id*. Conversely, the idea is that should these providers not provide favorable testimony,

16    and should a verdict be entered for the defense, Medport might stop referring them patients and

17    impact their business revenue. The argument seems to be that if Plaintiff loses, then MoveDocs

18    could remove his medical providers from their facility map—affecting their ability to engage in

19    business with patients and to sell accounts receivable to Medport.

20    Movants rely on *ML Health Care Services, LLC v. Publix Super Markets, Inc*., 881 F.3d

21    1293, 1302 (11th Cir. 2018), which held that payment arrangements between the third party and

22    the medical provider were relevant to show bias. In that case, the third party was referring

23    patients to the medical providers and then purchasing accounts receivable at a discount. The

24    defendant in that case argued that the medical providers are beholden to the third party: they are

25    willing to testify favorably at trial to continue obtaining referrals. In short, that case suggests that

26

27    _____

28    [2] This court construes Movants' Response in Opposition to Medport's Countermotion to
     Quash (ECF No. 17) also as a Reply to its Motion to Compel (ECF No.1).

1    a verdict for a plaintiff is profitable to the third party, which in turn results in additional referrals

2    to medical providers. *Id. ML Health Care Services* also held that this information was relevant for

3    purposes of impeachment. *Id*. Movants argue the same incentive at play in *ML Healthcare*

4    *Services* exists in this case.

5          Lastly, Movants seek payments of attorneys' fees for filing this motion.

6                                    **Medport's Argument**

7          Medport's requests that the court deny Movants' motion and argues that the information

8    sought is irrelevant and disproportionate to the needs of the case.[3] ECF No. 4 at 10-13.

9    Medport first explains that it is neither a medical provider nor a health insurance provider and

10   does not direct the medical care or treatment of any patient. ECF 4-2 (affidavit by Kenneth Fust,

11   one of the principals of Medport). It explains that neither the plaintiff in the underlying action nor

12   his attorneys participates in any negotiations between Medport and the medical providers. *Id*.

13   Further, it contends that Medport was not involved with the charges billed by the medical

14   providers nor was it involved in the procedures performed or recommended by providers. *Id*.

15   Importantly, Medport does not "pay any of the patients' medical bills." *Id*. Instead, Medport

16   purchased the rights to the receivable while the plaintiff is still responsible for the full amount he

17   previously owed his medical providers (irrespective of the discounted rate for which Medport

18   purchased those accounts receivable). *Id*. As a result, Medport argues that information concerning

19   the amount Medport paid medical providers is irrelevant and inadmissible under Alabama law

20   because these amounts were not "written off." That is, unlike the plaintiff in *Bobo*, the plaintiff in

21   this case owes the third party (Medport) the full amount he was billed by his medical providers,

22   irrespective of the negotiated price for which Medport purchased those accounts receivable. In

23   addition, Medport points to *Magrinat v. Maddox*, 220 So.3d 1081 (Ala. Civ. App. 2016), which

24   held that Ala. Code § 12-21-45 was not applicable and that the plaintiff was entitled to recover as

25   damages the amount he owed the third party who purchased the accounts receivable from the

26

27

28         [3] See footnote 1 above.

1    medical providers, irrespective of the amount the medical provider agreed to accept from the third

2    party purchaser.

3          As to Movants' argument regarding evidence of bias, Medport states it has no input as to

4    the kind or length of treatment Plaintiff receives from providers. ECF No. 4-2. Medport

5    represents that it does not refer patients to providers nor do their negotiations involve plaintiffs or

6    their counsel. *Id.* In any event, they argue it is not *the amount which Medport paid these*

7    *providers* that would establish bias. Rather, it is the relationship itself. Put differently, Medport

8    states that it is not whether it bought these account receivables at a 30%, 50%, or 70% discount

9    that would establish evidence of bias. Besides, they argue Movants can get this information by

10   questioning medical providers instead of seeking these documents showing the amount paid for

11   the medical services.

12                                        **Analysis**

13         Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. Rule

14   45 provides that a party may command a non-party to produce designated documents in that

15   person's possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). The place of compliance

16   must be within 100 miles of where Medport regularly transacts business. *See* FRCP 45(c)(2).

17   Medport is a limited liability company organized under Nevada laws and headquartered in Las

18   Vegas, Nevada.  As a result, compliance would have to take place within 100 miles of Medport's

19   headquarters, and Movants' motion is properly before this court. FRCP 45(d)(2)(B)(i).

20         It is well established that the scope of discovery under a subpoena issued pursuant to Rule

21   45 is the same as the scope of discovery allowed under Rule 26(b)(1). *Proficio Mortg. Ventures,*

22   *LLC. v. Fed. Sav. Bank*, 2016 WL 1465333, at *3 (D. Nev. Apr. 14, 2016). Rule 26 allows a party

23   to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or

24   defense. The party resisting discovery bears the burden of persuasion. *U.S. Equal Emp't*

25   *Opportunity Comm'n v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006). If the

26   discovery sought is not relevant, the court should restrict discovery by issuing a protective order.

27   *Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 644 (D. Ariz. 2005) (citing *Herbert v. Lando*,

28   441 U.S. 153, 177 (1979)). The relevancy standard for Rule 26 also applies to third-

1    party subpoenas. *Beinin v. Ctr. for Study of Popular Culture,* 2007 WL 832962, at \*2 (N.D. Cal.

2    Mar. 16, 2007).

3         Federal Rule of Civil Procedure 26(b)(1) provides for a broad scope of discovery,

4    recognizing that the "mutual knowledge of all the relevant facts gathered by both parties is

5    essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947). Accordingly,

6    under this rule, relevance is broader than admissibility at trial, in the sense that "[i]nformation

7    within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R.

8    Civ. P. 26(b)(1)). Under the previous version of Fed. R. Civ. P. 26(b)(1)—before the 2015

9    amendments—inadmissible evidence was discoverable if it "appear[ed] reasonably calculated to

10   lead to the discovery of admissible evidence." The 2015 amendments, however, deleted that

11   phrase from Fed. R. Civ. P. 26(b)(1) and replaced it with language that better represents the

12   phrase's original intent: "Information within this scope of discovery need not be admissible in

13   evidence to be discoverable." See Fed. R. Civ. P. 26(b)(1). The test is not whether information is

14   "reasonably calculated to lead to admissible evidence," but whether evidence is "relevant to any

15   party's claim or defense." In turn, relevance is defined in Rule 401 of the Federal Rules of

16   Evidence, which states that "relevant evidence" is evidence having "any tendency to make [the

17   existence of] a fact [that is of consequence to the determination of the action] more or less

18   probable than it would be without the evidence." Fed. R. Evid. 401.

19        This court is persuaded by Medport's arguments and does not find that the amount

20   Medport paid for the accounts receivable is relevant to the underlying case. The amount Medport

21   paid for these account receivables is simply of no consequence to the determination of the case.

22   That is because, irrespective of the discounted rate at which Medport purchased these accounts,

23   under Alabama law, the plaintiff in the underlying case is entitled to recover the amount he owes.

24   *Maddox*, 220 So.3d at 1086; *see also Bobo* 855 F.3d at 1311.

25        This court agrees with Movants that *Bobo* stands for the proposition that a plaintiff in

26   Alabama cannot recover damages for medical expenses if he has not paid or if he is not liable to

27   pay for those services. *Bobo,* 855 F.3d at 1311 (citing *Jones v. Crawford*, 361 So.2d 518, 521

28   (Ala. 1978)). In fact, the Eleventh Circuit explained that agreements between medical providers

1   and health insurance companies that result in write-offs to the insurance company "are not

2   amounts that a plaintiff has paid or is obligated to pay within the meaning of Alabama Supreme

3   Court's decisions." *Id*. As a result, in Alabama, a plaintiff cannot recover more than he is actually

4   liable for.

5       In this case, however, the plaintiff in the underlying case must pay Medport the full

6   amount he was billed by his medical providers—irrespective of the price Medport paid for those

7   accounts receivable. In that sense, unlike the plaintiff in *Bobo*, this plaintiff is not benefitting

8   from any agreements between Medport and his medical providers. As a result, it appears he will

9   be able to introduce the full amount he owes Medport as part of his damages calculation. *See*

10  *Bobo* at 1311 (explaining that damages for medical expenses are allowed for medical bills "which

11  the plaintiff has paid or has become obligated to pay" (citing *Ala. Fram Bureau Mut. Cas. Ins.*

12  *Co. v. Smelley*, 329 Spo.2d 544, 546 (1976))). Likewise, Maddox supports this conclusion. *See*

13  *Maddox*, 220 So.3d at 1086.

14      Given this, the amount Medport paid plaintiff's medical providers for medical services—

15  in addition to not being admissible—is simply irrelevant to Movants' defense and, as a result, not

16  discoverable. None of the other cases cited by Movants persuade this court otherwise. And the

17  court does not need to reach Medport's countermotion on this issue given that it finds Movants

18  have not met their burden of persuasion.[4]

19      As to bias, the court agrees that evidence of bias is always relevant, and thus falls within

20  the scope of Rule 26. It is not clear in this case whether Medport occupies the same place that the

21  third party in *ML Health Services* did. That is, Medport's role seems much less involved than

22  what Movants believe it is. Medport represents it does not refer patients to providers and is not

23  involved in plaintiffs' treatment. ECF No. 4-2. Movants' argument that the e-mail (in which

24  MoveDocs was copied) and their facility map show a deeper entanglement between Medport and

25

26      [4] Movants raise for the first time in its response to Medport's countermotion the argument
    that the amount for which Medport purchased the accounts receivable is relevant to show the
27  reasonableness of the medical bills. ECF No. 17 at 12. Because the court does not need to reach
    Medport's countermotion, it does not consider the argument (although it notes that even if it did,
28  it would be difficult to do so given how undeveloped the argument is).

1   medical providers was refuted by Medport in writing and during oral argument. In any event, the

2   court agrees that the amount Medport paid for these services is not what will allow Movants to

3   adduce evidence of bias. Rather, it is the relationship and course of dealing that may allow

4   Movants to make that argument to the jury. As a result, while evidence of bias is relevant, the

5   documents showing the amount paid for the medical services are not relevant, as they do not

6   establish bias. As a result, they are not discoverable.

7         In sum, the court is persuaded that the amount Medport paid for Plaintiff's accounts

8   receivable is not likely to establish evidence of bias and that there are other ways Movants can

9   establish bias without having access to the amount paid for the accounts receivable. Specifically,

10  Movants may be able to subpoena the necessary witnesses to testify at trial as to the relationship

11  between the medical providers and Medport, the number of times they have dealt with one

12  another, the type and degree of involvement on the part of Medport (if any) as to the medical

13  treatment of plaintiffs, and whether having a verdict for the defense would diminish its prospects

14  of dealing with Medport in the future.

15        The court is inclined to believe that some of the other documents that Movants

16  subpoenaed may be relevant to show bias (*e.g.*, documents showing Medport's corporate structure

17  and documents showing any referrals between plaintiffs' counsel and Medport). However, given

18  the lack of specificity from Movants as to what categories of information fall within the

19  arguments it makes, the court cannot fairly determine which documents, if any, are discoverable.

20  Accordingly, the court will deny the remainder of Movants' motion to compel without prejudice.

21  …

22  …

23  …

24  …

25  …

26  …

27  …

28  …

1

**Fees**

2        Movants ask for fees but do cite any authority or explain why they should be entitled to

3    fees. The court will not manufacture arguments for Movant. And, in any event, given the court's

4    findings, the court is hard pressed to believe fees would be merited.

5

**Conclusion**

6        IT IS ORDERED THAT ECF No. 1 is DENIED.

7        IT IS FURTHER ORDERED that ECF No. 5 is DENIED as moot.

8

9        DATED: July 1, 2020

10

11                                    BRENDA WEKSLER
                                      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28